Opinion by Judge N.R. SMITH; Concurrence by Judge OWENS; Concurrence by Judge WATFORD.
N.R. SMITH, Circuit Judge,
joined by THOMAS, Chief Judge, and GOULD, TALLMAN, RAWLINSON, BYBEE, CALLAHAN, IKUTA, NGUYEN, and OWENS, Circuit Judges:
ORDER
The Opinion filed on December 28, 2015, is amended as follows:
*473 on slip Opinion page 5-6, footnote 1,. please substitute the following text:
For purposes of cancellation of removal, Almanza alleges that he arrived in the United States in 1989. Neither the immigration judge (“IJ”) nor the Board of Immigration Appeals (“BIA”) addressed whether Almanza accrued the ten years of physical presence needed to qualify for cancellation of removal, 8 U.S.C. § 1229b(b)(1)(A), and therefore neither do we. Navas v. INS, 217 F.3d 646, 658 n. 16 (9th Cir.2000).
With this amendment, the Petitioner’s Unopposed Motion to Amend Opinion is GRANTED. No petition for rehearing or rehearing en banc was filed within the original time period, and that time period has now expired. No subsequent petitions for rehearing or rehearing en banc shall be filed.
OPINION
California Vehicle Code § 10851(a) is an indivisible statute, criminalizing both conduct that would and would not constitute a crime involving moral turpitude. Therefore, section 10851(a) cannot be a categorical match to a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). Thus, we grant the petitions and remand for further proceedings, because a conviction under' this statute does not render a petitioner ineligible for cancellation of removal.
I. FACTS AND PROCEDURAL HISTORY
Gabriel Almanza-Arenas (“Almanza”) is a native and citizen of Mexico. Almanza last entered the United States without being admitted or paroled in October 2000.[1] In February 2005, the Department of Homeland Security (“DHS”) issued a Notice to Appear, alleging that Almanza was removable because he was not properly admitted or paroled to the United States. On July 21, 2005, Almanza admitted the truth of the factual allegations in the Notice to Appear and conceded his removability. However, Almanza orally requested 8 U.S.C. § 1229b cancellation of removal at the hearing (and thereafter filed a written application in January 2006) and alternatively requested voluntary departure.[2]
In his application for cancellation of removal, Almanza disclosed that he pleaded guilty to a misdemeanor violation of California Vehicle Code § 10851(a) (under People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970)[3]) on September *474 12, 2000. The parties agree that California Vehicle Code § 10851(a) punishes both permanently depriving (which is a crime of moral turpitude) and temporarily depriving (which is not a crime of moral turpitude) an owner of his or her vehicle. People v. Garza, 35 Cal.4th 866, 28 Cal.Rptr.3d 335, 111 P.3d 310, 315 (2005).
Thus, the IJ held a hearing regarding Almanza’s eligibility for cancellation of removal and voluntary departure. At the hearing, the DHS argued that Almanza’s conviction disqualified him from cancellation of removal because a conviction for violation of California Vehicle Code § 10851(a) presents a crime involving moral turpitude. The DHS also placed into evidence three state court documents: (1) a felony complaint charging Almanza with a violation of California Vehicle Code § 10851(a);[4] (2) a copy of Almanza’s September 12, 2000 guilty plea (pursuant to People v. West, 91 Cal.Rptr. 385, 477 P.2d at 410) to a misdemeanor violation of California Vehicle Code § 10851(a); and (3) a judgment showing that Almanza received a sentence of twenty-four days time served. Neither party placed the transcript of Al-manza’s plea colloquy for this conviction into evidence.[5]
After the hearing, the IJ denied Alman-za’s petition for cancellation of removal. The IJ found that Almanza had not met his burden of proof to show eligibility for cancellation of removal, because he had not shown that he was convicted of the lesser “temporary” offense in section 10851(a).
The BIA affirmed the IJ’s holding and dismissed Almanza’s appeal in a published decision. Matter of Almanza-Arenas, 24 I. & N. Dec. 771 (B.I.A.2009). The BIA concluded that, because Almanza’s application for relief was filed after May 11, 2005, the REAL ID Act applied to his case. Id. at 774. The BIA concluded that the conviction record before the IJ was ambiguous, and it was Almanza’s duty to produce evidence (including the requested plea colloquy) that he did not commit a crime involving moral turpitude because he had the burden of proof. Id. In particular, the BIA concluded Almanza did not meet his burden of proof of showing eligibility for cancellation of removal, because he did not produce more specific evidence (as the IJ requested) to show that he did not intend to permanently deprive the owner of his or her vehicle.[6] Id. at 774-76.
Petitioner timely petitioned for review.[7] A three judge panel granted the petition. *475 Almanza-Arenas v. Holder, 771 F.3d 1184 (9th Cir.2014). We then granted rehearing en banc. Almanza-Arenas v. Lynch, 785 F.3d 366 (9th Cir.2015).
II. ANALYSIS
To determine whether section 10851(a) is a crime involving moral turpitude, we apply the three-step process set forth in Descamps v. United States, —— U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013):
At the first step, we compare the elements of the state offense to the elements of the generic offense defined by federal law. If this “categorical approach” reveals that the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as [a crime involving moral turpitude]. When a statute is “overbroad,” meaning that it criminalizes conduct that goes beyond the elements of the federal offense, we turn to step two: determining whether the statute is “divisible” or “indivisible.” If the statute is indivisible, “our inquiry ends, because a conviction under an indivisible, overbroad statute can never serve as a predicate offense.” Only when a statute is overbroad and divisible do we turn to step three — the “modified categorical approach.” At this step, we may examine certain documents from the defendant’s record of conviction to determine what elements of the divisible statute he was convicted of violating.
Lopez-Valencia v. Lynch, 798 F.3d 863, 867-68 (9th Cir.2015) (internal citations omitted).
A. Step One: Compare Elements of the State Offense to the Elements of the Federal Generic Offense.
To determine whether a state criminal statute is categorically a crime involving moral turpitude, we use a two-step process, each step with a different standard of review. Castrijon-Garcia v. Holder, 704 F.3d 1205, 1208 (9th Cir.2013). “The first step is to identify the elements of the statute of conviction.” Id. We review this step de novo, because “the BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes.” Id. (alteration and citation omitted). “The second step is to compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition.” Id. We review this step following the Chevron framework and defer to the BIA’s conclusion if warranted. Id.; see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
To identify the elements of California Vehicle Code § 10851(a), we apply California rules of statutory construction. Lieberman v. Hawkins (In re Lieberman), 245 F.3d 1090, 1092 (9th Cir.2001). “Under California law, the cardinal rule of statutory construction is to determine the intent of the legislature.” Id. We therefore determine intent by first looking “to the language of the statute and giv[ing] effect to its plain meaning.” Id. “If the intent of the legislature is not clear from *476 the language of the statute, legislative history may be considered.” Id. California Vehicle Code § 10851(a) (2000) provides:
Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle ... is guilty of [unlawfully taking or driving a vehicle.[8]]
The language of the statute shows that there are three elements of this offense: (1) a person drove or took a vehicle not his or her own; (2) the owner did not provide consent to drive or take his or her vehicle; and (3) the person drove or took the vehicle with intent either to permanently or temporarily deprive the owner, whether with or without intent to steal the vehicle. The last element of section 10851(a) (relevant here) criminalizes the driving or taking of a vehicle without consent regardless of whether the individual had the “intent to either permanently or temporarily deprive the owner” of his or her vehicle.
Comparing section 10851(a) to the generic definition of a crime involving moral turpitude, we look to see if the crime is “vile, base, or depraved” and “violates accepted moral standards.” Ceron v. Holder, 747 F.3d 773, 779 (9th Cir.2014) (en banc) (quoting Latter-Singh v. Holder, 668 F.3d 1156, 1161 (9th Cir.2012)). Although section 10851(a) is generally considered to be a theft offense, see Duenas-Alvarez, 733 F.3d at 814, not all “theft” offenses are crimes involving moral turpitude. See Castillo-Cruz v. Holder, 581 F.3d 1154, 1159 (9th Cir.2009). Instead, “[t]he BIA has held in a number of cases that a theft offense is not categorically a crime of moral turpitude if the statute of conviction is broad enough to criminalize a taking with intent to deprive the owner of his property only temporarily.” Id.; see also Matter of M-, 2 I. & N. Dec. 686, 686 (B.I.A.1946) (holding joyriding is not a crime involving moral turpitude); Matter of D-, 1 I. & N, Dec. 143, 143, 145 (B.I.A.1941) (holding that driving an automobile without the consent of the owner is not a crime involving moral turpitude). As a result, section 10851(a) punishes conduct that is categorically a crime of moral turpitude (permanently depriving) and conduct that is not categorically a crime of moral turpitude (temporarily depriving). Because section 10851(a) is “overbroad” and “criminalizes conduct that goes beyond the elements of the federal offense,” it is not a categorical match. See Lopez-Valencia, 798 F.3d at 867-68. We must then turn to step two.
B. Step Two: Is the Statute Divisible or Indivisible?
Step two requires us to determine whether section 10851(a) is a divisible or indivisible statute. In other words, we must determine whether section 10851(a) has “multiple, alternative elements, and so effectively creates ‘several different crimes.’ ” Descamps, 133 S.Ct. at 2285 (alteration omitted) (quoting Nijhawan v. Holder, 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009)). If it has alternative elements, it is divisible and we continue to step three — the modified categorical approach. Alternatively, if section 10851(a) has á “single, indivisible set of elements” with different means of committing one crime, then it is indivisible and we end our inquiry, concluding that there is no cate *477 gorical match to the generic federal offense. Id. at 2286.[9]
Our specific inquiry here is whether section 10851(a)’s “intent” element (to permanently or temporarily deprive) is divisible or indivisible. We therefore must determine whether the text of section 10851(a) sets forth elements or means. We do this by first looking to the plain language of the statute.
1. Elements versus Means.
Divisibility, like element identification, is reviewed de novo, because it “is a purely legal question which does not require any additional fact-finding.” Medino-Lara v. Holder, 771 F.3d 1106, 1117 (9th Cir.2014); Ceron, 747 F.3d at 778 (noting that we review element identification de novo, “[bjecause the BIA lacks expertise in identifying the elements of state statutes”). Therefore, we owe no deference to the BIA’s conclusion (without analysis) that section 10851(a) was divisible. See Matter of Almanza-Arenas, 24 I. & N. Dec. at 774.
As outlined in Descamps, we distinguish indivisible statutes from divisible statutes by determining whether the statutes provide multiple, alternative means of committing the crime. See 133 S.Ct. at 2285. In United States v. Cabrerar-Gutier-rez, we determined that if the elements of the crime are alternative to each other— not the mode or means of proving an element of the crime — the statute is divisible. 756 F.3d 1125, 1135-37 & n. 16 (9th Cir.2013).
In Richardson v. United States, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) (upon which Descamps relied), the Supreme Court made it clear that elements are different than means. It held:
If the statute creates a single element, a “series,” in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each “violation” a separate element, then the jury must agree unanimously about which three crimes the defendant committed.
Id. at 818, 119 S.Ct. 1707. Therefore, a single element must be part of a charged offense with which a jury necessarily found the defendant guilty. See Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (holding that when a statute includes entry of a building or automobile, the modified approach can only be used “if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict”); see also Descamps, 133 S.Ct. at 2288 (“The Sixth Amendment contemplates that a jury — not a sentencing court — will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense — as distinct from amplifying but legally extraneous circumstances.”).
Richardson makes clear that the first step in determining elements versus means (and thus divisibility) begins with the text of the statute of conviction.[10] 526 U.S. at 818, 119 S.Ct. 1707. The text *478 of section 10851(a), as noted above, presents three indivisible elements. Although section 10851(a), uses disjunctive phrasing in two of the three elements, the use of “or” does not create additional elements.[11] Rather, the disjunctive phrasing creates different means of committing the one offense. The first element can be completed by either driving a vehicle or taking a vehicle (which vehicle belongs to another person). The second element can be completed by driving or taking the vehicle without the consent of the owner. The third element (the element at issue here) can be completed by either permanently or temporarily depriving the owner of his or her vehicle. The means or methods of committing the element of the offense do not make the statute divisible, because the trier of fact does not need to agree as to whether the deprivation was temporary or permanent (the length of time during which the deprivation occurred). Thus, section 10851(a) is an indivisible statute.
We confirm this statutory interpretation by first examining the Shepard documents to see whether the statute displays alternative elements instead of alternative means of committing the same crime.[12] See Descamps, 133 S.Ct. at 2285 n. 2 (“When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.”). Here, an examination of the Shepard documents confirms our conclusion that section 10851(a) is indivisible. The indictment charges that Almanza violated section 10851(a) by taking the car “with intent either permanently or temporarily to deprive the owner” of the car. Prosecutors may not charge a defendant in the disjunctive, as the indictment did here, if they are charging two separate offenses.[13] See The Confiscation Cases, 87 U.S. (20 Wall.) 92, 104, 22 L.Ed. 320 (1874) (“[A]n indictment or a criminal information which charges the person accused, in the disjunctive, with being guilty of one or of another of several offences, would be destitute of the necessary certainty, and would be wholly insufficient.”). As noted in Des- *479 camps, “[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives.” 133 S.Ct. at 2290. Thus, when reviewing the Shepard documents, a court can discover what the prosecutor included as elements of the crime and to what elements the petitioner pleaded guilty. Therefore, because the indictment charged Almanza with having intent either to permanently deprive or temporarily deprive the owner, the indictment reveals that (under state law) the two forms of intent are alternative means of accomplishing the same crime instead of two separate crimes. Section 10851 is therefore an indivisible statute.[14]
Even though the plain language of the statute is confirmed by the Shepard documents (section 10851(a) only has three elements), the BIA found (and the government argued) that the statute is divisible because the intent element was written in the disjunctive. Therefore, to further support our analysis, we verify that our interpretation of section 10851(a)’s intent element is the same as the interpretation of the California courts.[15] As the Supreme Court has counseled, if the state courts have addressed the issue, “we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.”[16] Schad v. Arizona, 501 U.S. 624, 636, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion); see also Albertson v. Millard, 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983 (1953)’ (per curiam) (“The construction given to a state statute by the state courts is binding upon federal courts.”). We look to a state’s laws to determine whether that state’s courts “have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime.” Schad, 501 U.S. at 636, 111 S.Ct. 2491. Therefore, we must verify that our interpretation of elements versus means is consistent with how California would instruct a jury as to this offense.
2. Application of State Law
Looking to state law to determine a state’s interpretation of its own statutes is *480 nothing new. In Descamps, the Supreme Court looked to state law to confirm the statute’s plain text that California did not require a “breaking and entering.” Descamps, 133 S.Ct. at 2282 (citing People v. Barry, 94 Cal. 481, 29 P. 1026, 1026-27 (1892)). The Supreme Court also applied this framework in Johnson v. United States, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). In that case, the defendant had a previous conviction of simple battery under Florida law, Fla. Stat. § 784.03(1)(a). 559 U.S. at 136, 130 S.Ct. 1265. Johnson objected to the conviction being classified as a violent felony. Id. In determining the elements of the crime, the Supreme Court concluded that there were three ways the prosecution could prove a battery, citing to state law. Id. (“Because the elements of the offense are disjunctive, the prosecution can prove a battery in one of three ways.” (citing State v. Hearns, 961 So.2d 211, 218 (Fla.2007))).
We similarly looked to the state interpretation of its own statute in two of our recent cases, Rendon v. Holder, 764 F.3d 1077, and Chavez-Solis v. Lynch, 803 F.3d 1004 (9th Cir.2015). In Rendon, after concluding that the statute was not a categorical match, we turned to the second step to determine divisibility. 764 F.3d at 1084. The statute’s text did not provide a clear answer to which parts of the statute were means versus elements; therefore, we looked to state law to determine whether the statute contained alternative elements rather than alternative means. Id. at 1088-89. In Chavez-Solis, we interpreted a dis-junctively worded statute. 803 F.3d at 1013. We looked to the pattern jury instructions/state law to assess the divisibility of the statute (i.e., what elements a jury must unanimously agree on). Id. After review of the state law, we concluded that California’s statute was indivisible because “California juries are not required to unanimously agree on what sexual conduct appears in a particular image in order to convict a defendant of possession of child pornography.” Id.
Several of our sister circuits have also looked to state law to verify whether a state statute has elements or means. For instance, in United States v. Pate, the Eighth Circuit concluded that the term “flee,” which was defined to mean “increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer” was indivisible, despite its disjunctive text. 754 F.3d at 554-55. Relying on Minnesota state law and practice jury instruction guides, the Eight Circuit concluded that “the statute does not require the factfinder (whether jury or judge) to determine how the defendant fled (i.e., the means of flight) because the method used to flee the peace officers is not an element of the crime.” Id. at 554 (internal quotation marks and citations omitted). The Fourth Circuit similarly concluded that it must look to how courts “generally instruct juries” with respect to the statute at issue. See Omargharib, 775 F.3d at 199.
We recognize that not all of our sister circuits agree that courts should look to state law to determine a statute’s elements following Descamps. See United States v. Trent, 767 F.3d 1046, 1061 (10th Cir.2014), cert. denied, — U.S. -, 135 S.Ct. 1447, 191 L.Ed.2d 400 (2015); Franco-Casasola v. Holder, 773 F.3d 33, 37-38 (5th Cir.2014) (“[A] divisible statute is one defined ‘alternatively, with one statutory phrase corresponding to the generic crime and another not.’ ” (quoting Descamps, 133 S.Ct. at 2286)).[17] In Trent, the Tenth Cir *481 cuit questioned whether the Supreme Court meant to use the term “elements” in the “traditional sense.” 767 F.3d at 1061. The Trent court effectively suggested that the difference between elements and means under Descamps is a distinction without a difference, because the Supreme Court limited a court’s ability to determine whether a statute is divisible by solely looking at the Taylor and Shepard documents (indictment, jury instructions, plea colloquy, and plea agreement). Id. (citing Descamps, 133 S.Ct. at 2285 n. 2).[18] The Trent court recognized that its analysis could be flawed and continued its analysis using the traditional elements and means definitions supplied by Richardson and Schad. See id.
This circuit split arises from a disagreement regarding the meaning of footnote 2 in Descamps. See Descamps, 133 S.Ct. at 2285 n. 2. In responding to Justice Alito’s dissent, criticizing the majority’s nuances concerning elements versus means, the Descamps majority provided:
And if the dissent’s real point is that distinguishing between “alternative elements” and “alternative means” is difficult, we can see no real-world reason to worry. Whatever a statute lists (whether elements or means), the documents we approved in Taylor and Shepard— i.e., indictment, jury instructions, plea colloquy, and plea agreement — would reflect the crime’s elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.
Id. We read this footnote as a guide to courts to look at Taylor and Shepard documents if there were difficulty in distinguishing between the elements and means and what a jury necessarily would have to unanimously conclude.[19] The Supreme Court is clear: “Whatever a statute lists (whether elements or means), the documents we approved in Taylor and Shepard ... would reflect the crime’s elements .... When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.” Id. (emphasis added). *482 This statement is consistent with the Supreme Court’s instruction that the modified approach “acts not as an exception, but instead as a tool. It retains the categorical approach’s central feature: a focus on the elements, rather than the facts, of a crime.” Id. at 2285. This explanation cannot be read to suggest that elements and means are one and the same. If the Supreme Court wanted to say that there was no material difference between the two terms, it knew how to do so. Thus, means or methods of committing an offense, in this context, is nothing more than focusing on the facts, which we are forbidden to do in a categorical analysis.
Determining the elements of section 10851(a), as defined by California law, we need not go beyond California’s pattern criminal jury instructions[20] (“CALJIC”) (in effect at the time Almanza pleaded guilty).[21] CALJIC 14.36 provides the appropriate instruction for persons who are charged with violating California Vehicle Code § 10851(a). It provides that a jury must find the following elements of the crime:
1. A person took or drove a vehicle belonging to another person;
2. The other person had not consented to the taking or driving of [his] [her] vehicle; and
3. When the person took or drove the vehicle, [he] [she] had the specific intent to deprive the owner either permanently or temporarily of [his] [her] title to or possession of the vehicle.
This jury instruction makes clear that California law treats the disjunctive phrases in the statute as means of committing the offense not separate elements creating new crimes. Therefore, the distinction between whether Almanza intended to permanently or temporarily deprive the owner of his or her vehicle need not be determined by an unanimous jury. Thus, section 10851(a) is an indivisible statute.
This conclusion ends our inquiry; we need not proceed to step three. We have “examine[d] what the state conviction necessarily involved, not the facts underlying the case, [and] we must presume that the conviction rested upon nothing more than the least of the acts criminalized.” Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013) (internal quotation marks and alterations omitted) (emphasis added). Because the least of the acts criminalized under section 10851(a) is a temporary taking, the statute is not categorically a crime involving moral turpitude.
The petitions for review are GRANTED, and the matter is REMANDED to the BIA for further proceedings.

. For purposes of cancellation of removal, Almanza alleges that he arrived in the United States in 1989. Neither the immigration judge ("IJ") nor the Board of Immigration Appeals ("BIA”) addressed whether Almanza accrued the ten years of physical presence needed to qualify for cancellation of removal, 8 U.S.C. § 1229b(b)(1)(A), and therefore neither do we. Navas v. INS, 217 F.3d 646, 658 n. 16 (9th Cir.2000).

. Because Almanza filed his application for cancellation of removal after May 11, 2005, the REAL ID Act applies. See Real ID Act of 2005, Pub.L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305 (codified in scattered sections of 8 U.S.C.) (Provisions of the REAL ID Act apply to “applications for ... relief from removal made on or after” May 11, 2005). Al-manza argues that the REAL ID Act should not apply because he was in removal proceedings prior to this date. There is no authority to support this argument; application of the REAL ID Act is based on the filing date of the application for cancellation of removal. See Shrestha v. Holder, 590 F.3d 1034, 1039 (9th Cir.2010).

.A West plea is "a plea of nolo contendere, not admitting a factual basis for the plea. Such a plea, also referred to as an Alford plea, based on North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence.” *474 People v. Rauen, 201 Cal.App.4th 421, 133 Cal.Rptr.3d 732, 734 (2011) (internal quotation marks and footnote omitted).

. The Complaint alleged in Count 1 that Al-manza "did unlawfully drive and take a vehicle, ... without the consent of and with intent either permanently or temporarily to deprive the owner of title and possession of said vehicle, in violation of VEHICLE CODE SECTION 10851(a).” The submitted Complaint crossed out one name and leaves the name "Raul Almanza.” Despite the reference to the wrong name, Almanza does not dispute that the submitted Complaint was the basis of his guilty plea.

. The IJ asked Almanza whether he was in the process of obtaining the transcript of the plea colloquy. Almanza did not present the transcript and argued that its admission was not necessary given his West plea (which is made without any admission to the facts).

. Because we conclude that section 10851(a) is indivisible, we do not reach the issue of whether Almanza met his burden of proof.

. Almanza’s petition for review included his motion for reconsideration, requesting that the BIA consider whether his offense qualified under the petty offense exception in INA § 212(a)(2)(A)(ii), 8 U.S.C. § 1182(a)(2)(A)(ii), and whether the offense is described in INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i). The BIA denied Almanza’s request for reconsideration, concluding that "[e]ven though the conviction is not 'described under' section *475 212(a)(2) of the Act because it falls under the petty offense exception, the respondent has been convicted of an offense ‘described under' section 237(a)(2) of the Act.” Because we conclude that section 10851(a) is categorically not a crime involving moral turpitude, we do not address whether the petty offense exception is applicable in the context of cancellation of removal.

. We acknowledge that section 10851(a) is divisible to the extent that it also pertains to a person who is an accessory or an accomplice. Duenas-Alvarez v. Holder, 733 F.3d 812, 814 (9th Cir.2013). However, Almanza was not convicted of that portion of the statute.

. At this point in the analysis, Judge Watford mistakenly parts from Descamps precedent, instead basing his concurrence on “multiple ways a particular element can be satisfied” without authority for such departure. See Concurring Op. 484 (Watford, J.).

. Judge Watford mistakenly suggests that the majority opinion is instead "predicated on the *478 same reasoning our court adopted in Rendon v. Holder, 764 F.3d 1077 (9th Cir.2014)." See Concurring Op. 483 (Watford, J.). To the contrary, our decision derives from Supreme Court precedent. To the extent the Rendon decision agrees with our decision, it remains circuit precedent.

. The mere use of the disjunctive term "or” does not automatically make a statute divisible. See Rendon, 764 F.3d at 1085-86 (concluding that when a state statute "is written in the disjunctive ... that fact alone cannot end the divisibility inquiry”); see also United States v. Howard, 742 F.3d 1334, 1348 (11th Cir.2014); United States v. Pate, 754 F.3d 550, 554-55 (8th Cir.), cert. denied, - U.S. -, 135 S.Ct. 386, 190 L.Ed.2d 272 (2014); Omargharib v. Holder, 775 F.3d 192, 198 (4th Cir.2014); United States v. Royal, 731 F.3d 333, 341-42 (4th Cir.2013).

. Prior to Descamps, Judge Watford may have been correct that we should not look at Shepard documents prior to a determination oí divisibility. However, a crime is only divisible if it includes alternative elements not alternative means. See Descamps, 133 S.Ct. at 2288. Thus, after Descamps, the Supreme Court allows us to look at Shepard documents to confirm the determination of the statute’s elements (and thereby its divisibility). Descamps, 133 S.Ct. at 2285 n. 2. Here, we look to Shepard documents merely "as a tool for implementing the categorical approach.” Cf. id. at 2284.

.We are mindful that prosecutors’ charging documents do not always charge a defendant properly. In some instances, prosecutors may fail to "select the relevant elements] from its list of alternatives,” Descamps, 133 S.Ct. at 2290, or may include the specific means of committing the offense out of convenience. We are also mindful that defendants may plead to these imprecisely charged indictments or informations without altera-, tion. Therefore, the divisibility analysis may not end after looking to Shepard documents.

.The Supreme Court has cautioned us not to engage in judicial factfinding. See James v. United States, 550 U.S. 192, 214, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), overruled on separate grounds by Johnson, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). "[B]y applying Taylor's categorical approach, we [have avoided] any inquiry into the underlying facts of [Almanza's] particular offense, and have looked solely to the elements of [section 10851(a)] as defined by [California] law.” Id. Under Judge Watford’s approach, it seems anything written in the disjunctive (whether elements or means) is divisible regardless of whether a jury necessarily had to find a defendant committed the element of the offense beyond a reasonable doubt. Rather than treating everyone (who has committed an offense under § 10851(a)) equally, he mistakenly would look to the facts of each case to see if he can discover the means of how the person committed the offense. See Concurring Op. 487 (Watford, J.).

. Descamps does not preclude us from looking to state law to determine whether the statute is indivisible after we have examined the Shepard documents. See Descamps, 133 S.Ct. at 2285 n. 2.

. Looking to state court precedent or to a state's pattern jury instructions (which are based on that state’s general law) solely to verify how a state instructs a juty as to the elements of a state offense is consistent with the Supreme Court’s mandate "to treat every conviction of a crime in the same manner.” Descamps, 133 S.Ct. at 2287. The Supreme Court made it clear, we are not "to explore whether a person convicted of one crime could also have been convicted of another, more serious offense.” Id. at 2292. "[T]hat circumstance-specific review is just what the categorical approach precludes.” Id.

. The Fifth Circuit has not addressed the elements versus means distinction, but rather *481 seems to apply the modified approach to all disjunctive subsections.

. Judge Watford agrees with these sister circuits and would treat elements and means interchangeably. His approach does not seem to narrow the range of cases where we can look beyond the statutory elements. See Descamps, 133 S.Ct. at 2283-84. Instead, it sets our analysis back to almost where we were pre-Descamps, inventing ways to make a statute divisible.

. Although we are mindful of the Supreme Court’s warning that "a court need not parse state law” to determine elements versus means, Descamps, 133 S.Ct. at 2285 n. 2, we do not interpret Descamps to suggest that we can never look to state law. In Descamps, the Supreme Court rejected the government’s argument that the element of “enters,” Cal.Penal Code § 459, was divisible by finding contradictory case law. Id. at 2291. The Supreme Court reserved the question of whether a "court should take account not only of the relevant statute's text, but of judicial rulings interpreting it.” Id. In this context, however, the reservation seems limited to unmentioned elements. See id. at 2296-97 (Alito, J., dissenting) (noting that "courts sometimes find that unmentioned elements are implicit”). The Descamps decision (which was not based on a disjunctively worded statute) does not purport to overrule prior precedent that allows a court to look to state law to determine whether the statute of conviction contains elements or means when it is phrased in the disjunctive. Rather, it only precludes courts from “parsing state law” in order to reach a desired result. See id. at 2285 n. 2.

. Jury instructions are Shepard "approved” documents only when they are submitted in the underlying action as part of the record. Shepard v. United States, 544 U.S. 13, 20-21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Jury instructions do not exist in this case where Almanza pleaded guilty.

. The use of the pattern CALJIC jury instructions is "not mandated by statute, [but] their use is recommended by the Judicial Council of California (Cal. Standards Jud. Admin. § 5).” People v. Prettyman, 14 Cal.4th 248, 58 Cal.Rptr.2d 827, 926 P.2d 1013, 1021 (1996). "[T]he Judicial Council has recommended their use, when applicable, ‘unless the trial judge finds that a different instruction would more adequately, accurately or clearly state the law.' " Mitchell v. Gonzales, 54 Cal.3d 1041, 1 Cal.Rptr.2d 913, 819 P.2d 872, 884 n. 2 (1991) (Kennard, J., dissenting) (alteration omitted) (citing Cal. Standards Jud. Admin. § 5).