**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERICO DIEGO DE DIEGO, *Petitioner*, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, *Respondent.* | No. 13-72048 <br><br> Agency No. A077-424-906 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 6, 2017
Seattle, Washington

Filed May 26, 2017

Before: Susan P. Graber, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Immigration

The panel denied in part and dismissed in part Diego's petition for review of the Board of Immigration Appeals' decision concluding that his conviction for attempted sexual abuse under Oregon Revised Statutes § 163.427 is an aggravated felony that warranted termination of his asylee status.

In determining that Diego's conviction is an aggravated felony under 8 U.S.C. § 1101(a)(43)(A), the panel applied the three-step process articulated in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and clarified in *Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2016) (en banc).

First, the panel held that the Oregon statute is not a categorical match to the generic federal offense of sexual abuse of a minor because the Oregon statute criminalizes more conduct than the generic federal offense. Second, the panel held that, in light of the statutory text, *Shepard* documents, and state court decisions, subparagraphs 163.427(1)(a)(A) through (C) are divisible. Third, under the modified categorical approach, the panel concluded that Diego was convicted under subparagraph (1)(a)(A), and that this subparagraph is categorically a generic federal sexual abuse of a minor offense, and by extension an aggravated felony under 8 U.S.C. § 1101(a)(43)(A).

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel also concluded that it lacked jurisdiction to review the BIA's discretionary decisions on the denial of adjustment of status and waiver of inadmissibility.

In a concurrently filed unpublished memorandum disposition, the panel denied and dismissed Diego's petition for review with respect to the remainder of his arguments.

## COUNSEL

Alma David (argued), Global Justice Law Group PLLC, Seattle, Washington; Erica Schommer, Rios & Cruz P.S., Seattle, Washington; for Petitioner.

Edward Earl Wiggers (argued) and Jennifer L. Lightbody, Senior Litigation Counsel; Mary Jane Candaux, Assistant Director; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

IKUTA, Circuit Judge:

The Board of Immigration Appeals (BIA) concluded that Federico Diego de Diego was an aggravated felon because of his conviction for attempted sexual abuse under Oregon law. *See* Or. Rev. Stat. § 163.427. The BIA therefore determined that Diego was deportable, terminated his asylee status, denied his request for adjustment of status to lawful permanent resident, and denied waiver of inadmissibility.

Diego petitions for review of these decisions. We deny the petition in part and dismiss it in part.**[1]**

I

In order to explain Diego's arguments, we begin by reviewing the relevant legal framework.

A

The Immigration and Nationality Act (INA) provides that the Secretary of Homeland Security or the Attorney General "may grant asylum to an alien who has applied for asylum in accordance with [applicable procedures] if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee . . . ."**[2]** 8 U.S.C. § 1158(b)(1)(A). A grant of asylum, however, "does not convey a right to remain permanently in the United States." *Id.* § 1158(c)(2). Rather, an alien's asylee status "may be terminated if the Attorney General determines" that the alien is ineligible for asylum. *See id.* § 1158(c)(2)(B). An alien is ineligible for asylum "if the Attorney General determines that . . . the alien, having

---

**[1]** We dispose of the remainder of Diego's arguments in a concurrently filed unpublished memorandum disposition. *See Diego v. Sessions*, — F. App'x — (9th Cir. 2017).

**[2]** For purposes of this provision, a "refugee" is "any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." *Id.* § 1158(b)(2)(A)(ii). For purposes of the "particularly serious crime" determination, the INA provides that "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." *Id.* § 1158(b)(2)(B)(i). Under the INA, an "aggravated felony" includes "sexual abuse of a minor," *id.* § 1101(a)(43)(A), and "an attempt . . . to commit" such abuse, *id.* § 1101(a)(43)(U). An alien who has "been convicted by a final judgment of a particularly serious crime" is also ineligible for withholding of removal, *id.* § 1231(b)(3)(B)(ii), and may be denied other discretionary relief, such as adjustment of status to lawful permanent resident, *id.* § 1159(b), or waiver of inadmissibility, *id.* § 1159(c).

B

In order to determine whether a predicate state conviction is an aggravated felony for purposes of the INA, we apply a three-step process set forth in *Descamps v. United States*, 133 S. Ct. 2276 (2013). *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2016) (en banc).

At the first step, we ask whether the elements of the alien's state statute of conviction criminalize more conduct than, or the same conduct as, the elements of a generic federal offense included in the definition of "aggravated felony" set forth at § 1101(a)(43). *See id.* (quoting *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015)). Under this categorical approach, if "the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as an aggravated

felony." *Lopez-Valencia*, 798 F.3d at 867. By contrast, if the elements of the state statute of conviction criminalize more conduct than the elements of the generic federal offense, then the state statute is overbroad and is not a categorical match. *Id*. at 867–68.

If the statute is overbroad, we proceed to step two and determine whether the state statute of conviction is "divisible" or "indivisible." *Id*. We employ a three-phase process to determine whether a state statute is divisible. First, we consider the statute's text. *Descamps*, 133 S. Ct. at 2285 & n.2. If the text is drafted with a list of disjunctive items that comprise alternative elements, such that the statute "effectively creates 'several different . . . crimes,'" *id*. at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)), then the statute is divisible, *see Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). If the statute merely lists alternate means of satisfying a single element, then it is indivisible. *See Almanza-Arenas*, 815 F.3d at 477–78.

If "distinguishing between 'alternative elements' and 'alternative means'" in a disjunctively phrased state statute is difficult, *Descamps*, 133 S. Ct. at 2285 n.2, we proceed to the second phase, "examining the *Shepard* documents to see whether the statute displays alternative elements instead of alternative means of committing the same crime," *Almanza-Arenas*, 815 F.3d at 478. The *Shepard* documents include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *Shepard v. United States*, 544 U.S. 13, 16 (2005), as well as the clerk's minute order, *see United States v. Snellenberger*, 548 F.3d 699, 702 (9th Cir. 2008) (en banc) (per curiam), *abrogated on other grounds by Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en

banc), and other documents that "reflect the crime's elements," *Descamps*, 133 S. Ct. 2285 n.2, and are "of equal reliability" to those the Supreme Court has approved, *Snellenberger*, 548 F.3d at 701.

In the third and final phase, "we verify that our interpretation [of the state statute of conviction] is the same as the interpretation of the [relevant state] courts." *Almanza-Arenas*, 815 F.3d at 479. In other words, "we must verify that our interpretation of elements versus means is consistent with how [the state] would instruct a jury as to this offense." *Id.*

If this three-phase analysis leads us to conclude that the statute is divisible, we proceed to the third step for determining if a state statute of conviction is an aggravated felony: the modified categorical approach. At this step, we look to the *Shepard* documents again, but this time "to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. Once we identify the crime of conviction, we "then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id*. Stated otherwise, we repeat step one—the categorical approach—but limited to the actual crime of conviction described in the relevant subpart of the divisible criminal statute. If this crime's elements are the same as or narrower than a generic federal offense that is defined as an aggravated felony under § 1101(a)(43), then the crime is a categorical match and a conviction for that offense constitutes an aggravated felony. *See Lopez-Valencia*, 798 F.3d at 867.

## II

We now turn to the facts of this case. Diego, a native and citizen of Guatemala, entered the United States without

inspection in December 1997. About one year after his arrival in this country, he applied for asylum and withholding of removal, which an immigration judge (IJ) granted in June 1999. The BIA affirmed the IJ's decision in September 2002, but Diego never filed an application to adjust his status to that of lawful permanent resident.

In February 2002, Diego was arrested in Oregon after a young woman reported to the police that Diego had entered her home in the middle of the night and inappropriately touched both her and a minor female in the home. According to the young woman, Diego had awakened her, touched her breasts through her clothes, and attempted to pull down her pants. The young woman instructed Diego to leave, but Diego instead went to the living room of the home where he came upon B.C., a nine-year-old friend of the young woman's sister. When the young woman found Diego with his arms wrapped around B.C., she called the police. B.C. told police that Diego had put his lip against the side of her mouth and touched her upper thigh.

In March 2002, the State of Oregon indicted Diego on two counts of burglary in the first degree, one count of theft in the third degree, one count of sexual abuse in the third degree and, as relevant here, one count of attempted sexual abuse in the first degree in violation of section 163.427 of the Oregon Revised Statutes. Count 3 of the indictment charged that "on or about February 17, 2002, in Washington County, Oregon, [Diego] did unlawfully and intentionally attempt to subject [B.C.], a person less than 14 years of age, to sexual contact."

Diego subsequently failed to attend one of his court hearings and was indicted for failure to appear. Ultimately,

Diego pleaded guilty to the two counts of burglary in the first degree, one count of attempted sexual abuse in the first degree, and one count of failure to appear in the first degree; the state dropped the remaining charges. Diego's "petition to enter plea" stated that he wished to plead guilty to Count 3, attempted sexual abuse in the first degree, and: "I plead guilty and request the Court to accept my plea and to have it entered on the basis of [o]n 2/17/02 in Washington County, I entered an apartment and while inside, I attempted to subject [B.C.] to sexual contact."

In September 2011, Diego was served with a notice to appear, alleging in pertinent part that he was removable as an aggravated felon, *see* 8 U.S.C. § 1227(a)(2)(A)(iii), due to his conviction for attempted sexual abuse in violation of section 163.427. Diego admitted the factual allegations in the notice to appear but denied removability. Applying the modified categorical approach, the IJ concluded that Diego's attempted sexual abuse conviction constituted an aggravated felony for purposes of § 1101(a)(43)(A).

After the IJ ruled that Diego was removable, the government moved to terminate Diego's asylee status and withholding of removal. Diego, in turn, sought (1) adjustment of status to lawful permanent resident under 8 U.S.C. § 1159(b) and waiver of inadmissibility under 8 U.S.C. § 1159(c); (2) withholding of removal under 8 U.S.C. § 1231(b)(3); and (3) relief under the Convention Against Torture (CAT). Because Diego had been convicted of an aggravated felony, the IJ determined that Diego was no longer eligible for asylum, *see* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i), and granted the government's motion to terminate his asylee status, *see id.* § 1158(c)(2)(B). The IJ then held, in the alternative, that Diego's case did not warrant the exercise of

discretionary relief under § 1159(b) and (c). Finally, the IJ determined that Diego's conviction rendered him ineligible for withholding of removal, and that Diego had not established eligibility for relief under the CAT.

The BIA dismissed Diego's appeal in May 2013, holding that the IJ had not erred in concluding that Diego's conviction pursuant to section 163.427 was for sexual abuse of a minor and therefore constituted an aggravated felony under § 1101(a)(43)(A). The BIA determined that the Oregon statute of conviction was divisible, that the indictment reflected that the victim was younger than fourteen, and that under Ninth Circuit precedent the criminal conduct was per se abusive. The BIA also held that the IJ had correctly determined that Diego was ineligible for asylum and appropriately granted the government's motion for termination of Diego's asylee status.

Diego timely petitioned for review. He contends that the IJ and BIA erred in concluding that his conviction for attempted sexual abuse under section 163.427 constitutes an aggravated felony, and by extension erred in terminating his asylee status and denying his application for adjustment of status and waiver of inadmissibility.

### III

We have jurisdiction to decide questions of law raised in a petition for review, *see* 8 U.S.C. § 1252(a)(2)(D), including whether Diego's conviction for attempted sexual abuse in the first degree is an aggravated felony. We review de novo the BIA's determination that Diego's conviction is an aggravated felony, and we do so without deference to the agency's interpretation of state or federal criminal law. *Sandoval v.*

*Yates*, 847 F.3d 697, 699 (9th Cir. 2017).    We lack jurisdiction to review decisions that the INA specifies "to be in the discretion of the Attorney General," 8 U.S.C. § 1252(a)(2)(B)(ii), or "any final order of removal against an alien who is removable by reason of having committed" an aggravated felony, *id.* § 1252(a)(2)(C).    Thus, we lack jurisdiction to consider any discretionary aspect of the agency's decision to deny Diego's application for adjustment of status and waiver of inadmissibility under 8 U.S.C. § 1159(b) and (c), as the Attorney General's discretion is specified in the statute.  *See Latter-Singh v. Holder*, 668 F.3d 1156, 1164 (9th Cir. 2012) (holding that we lack jurisdiction over "the discretionary use of" power under § 1159(c)); *cf. Spencer Enters., Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003) (holding that provisions providing that the Attorney General "may" take certain action vest unreviewable "ultimate authority . . . in the discretion of the Attorney General").

IV

We now apply the relevant legal principles to the facts of this case.   Diego argues that his Oregon conviction for attempted sexual abuse, Or. Rev. Stat. § 163.427, is a not an aggravated felony for purposes of § 1101(a)(43)(A) because his crime of conviction is not a categorical match to the generic federal offense of sexual abuse of a minor.  Section 163.427 provides:

> (1) A person commits the crime of sexual abuse in the first degree when that person:

> (a) Subjects another person to sexual contact and:

(A) The victim is less than 14 years of age;

(B) The victim is subjected to forcible compulsion by the actor; or

(C) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or

(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

## A

We analyze Diego's argument by using the three-step process articulated in *Descamps* and clarified in *Almanza-Arenas*. We begin the *Descamps* analysis by asking whether section 163.427 criminalizes the same or less conduct as the elements of the generic federal offense of sexual abuse of a minor. *Almanza-Arenas*, 815 F.3d at 475.

We have provided two definitions of "sexual abuse of a minor." First, "for purposes of § 1101(a)(43)(A), Congress has enumerated the elements of the offense of 'sexual abuse of a minor' at 18 U.S.C. § 2243." *Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1013 (9th Cir. 2009) (internal quotation marks omitted). Under § 2243, a person commits sexual abuse of a minor if a person "knowingly engages in a sexual act" with another person who is at least 12 years old, but less than 16,

and at least four years younger than the defendant.  *Id.*
Second, a crime "may qualify as the federal generic offense
of 'sexual abuse of a minor' if: (1) the conduct prohibited by
the criminal statute is sexual, (2) the statute protects a minor,
and (3) the statute requires abuse." *Id*. at 1014.  For purposes
of this second definition, we have defined "abuse as physical
or psychological harm in light of the age of the victim in
question." *United States v. Medina-Villa*, 567 F.3d 507, 513
(9th Cir. 2009) (internal quotation marks omitted).

On its face, section 163.427 criminalizes more conduct
than the generic federal offense of sexual abuse of a minor
because a person may violate the statute by subjecting adults
to abusive sexual contact.    For example, the statute
criminalizes sexual contact with any person (whether a minor
or an adult) who is incapable of consent by virtue of being
"mentally incapacitated." Or. Rev. Stat. § 163.427(1)(a)(C).
Because the statute as a whole does not categorically match
the generic federal offense, we must proceed to the second
step of the *Descamps* analysis.

B

We have already determined that section 163.427 is a
divisible statute, in that paragraphs (1)(a) and (1)(b) define
two different crimes.**[3]**    *United States v. Rocha-Alvarado*,
843 F.3d 802, 807 n.2 (9th Cir. 2016), *petition for cert. filed*,
No. 16-7885, — U.S.L.W. — (U.S. Feb. 6, 2017).  We have
not, however, considered whether paragraph 163.427(1)(a)'s

---

**[3]** We adopt the Oregon Supreme Court's nomenclature for describing
section 163.427's subdivisions from *State v. Parkins*, 346 Or. 333, 350
(2009) (describing 163.427(1)(a) as a "paragraph" with "three
subparagraphs").

subparagraphs are similarly divisible, and so we turn to the three-phase process set forth in *Almanza-Arenas*. At phase one, we consider paragraph 163.427(1)(a)'s text, and note that it uses disjunctive phrasing. The statutory text joins the element of subjecting another person to sexual contact to one of three alternative enumerated circumstances. This phrasing suggests that the legislature created three different offenses: subjecting a victim who is less than 14 years old to sexual contact, *or* subjecting another person to sexual contact through the use of forcible compulsion, *or* subjecting another person who is incapable of consent for specified reasons to sexual contact. Or. Rev. Stat. § 163.427(1)(a).

We "confirm this statutory interpretation by . . . examining the *Shepard* documents to see whether the statute displays alternative elements instead of alternative means of committing the same crime." *Almanza-Arenas*, 815 F.3d at 478. Because Count 3 of Diego's state court indictment, which charged him with "unlawfully and intentionally attempt[ing] to subject [B.C.], a person less than 14 years of age, to sexual contact," in violation of section 163.427, tracks subparagraph (1)(a)(A), but lacks any text referencing subparagraphs (1)(a)(B) or (C), the indictment "indicate[s], by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Mathis*, 136 S. Ct. at 2257. Similarly, Diego's petition to enter a plea admits to the conduct of "attempt[ing] to subject [B.C.] to sexual contact," which again tracks the wording of subparagraph (1)(a)(A), in that it admits only that he subjected B.C., a victim known to be less than 14 years of age, to sexual contact. Like the indictment, the plea petition makes no reference to the conduct described in subparagraphs (1)(a)(B) or (C). From these documents, we infer that Oregon treated the victim's

age as a necessary fact that the state was required to prove beyond a reasonable doubt to secure Diego's conviction, i.e., an element of the offense. *See Descamps*, 133 S. Ct. at 2290.

Finally, we verify our interpretation of section 163.427 by considering the interpretation of Oregon courts, *Almanza-Arena*, 815 F.3d at 480, which again demonstrate that the three subparagraphs in paragraph 163.427(1)(a) are alternative elements of the offense. In *State v. Marshall*, for example, the Oregon Supreme Court characterized "sexual contact" and "subjecting the victim to 'forcible compulsion,'" a phrase specific to subparagraph 163.427(1)(a)(B), as "the two elements of the crime." 350 Or. 208, 217 (2011). Similarly, in *State v. Gray* the Court of Appeals of Oregon described "subjected to forcible compulsion"—the operative language of subparagraph 163.427(1)(a)(B)—as an "element" of the crime. 261 Or. App. 121, 125 (2014). The court used the same characterization in *State v. Nelson*, 241 Or. App. 681, 688 (2011). These cases point persuasively to the conclusion that the disjunctive enumerated list of subparagraphs (A) through (C) is a list of alternative elements, not means.

Diego argues that *State v. Parkins* is to the contrary. *Parkins* considered whether a defendant could be convicted for more than one count of sexual abuse if the defendant's conduct violated more than one subparagraph of 163.427(1)(a). 346 Or. at 335. The defendant in *Parkins* used "forcible compulsion," Or. Rev. Stat. § 163.427(1)(a)(B), to subject a victim "less than 14 years of age," *id.* § 163.427(1)(a)(A), to three sexual contacts. 346 Or. at 348. The court analyzed this issue under Oregon's "anti-merger" statute, *id.*, which provides:

When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

Or. Rev. Stat. § 161.067(1). *Parkins* explained that in order to determine whether the anti-merger statute applies to paragraph 163.427(1)(a), it was necessary to determine "whether the legislature intended to create a single crime or two or more crimes." 346 Or. at 349. Applying this standard, *Parkins* concluded that the state legislature did not intend to punish a defendant for three separate violations of section 163.427 if the defendant engaged in a *single act* of sexual abuse that happened to include all the elements of subparagraphs (1)(a)(A) through (C). *Id.* at 355. *Parkins* reasoned that the legislature intended section 163.427 to define the single crime of first degree sexual abuse (as opposed to lesser degrees of sexual abuse defined by other statutes), and listed four ways in which a person commits such an aggravated offense. *Id.* at 350. Therefore, "[t]he presence of more than one of the elements that convert a lower degree of sexual abuse to first-degree sexual abuse" in the defendant's conduct "does not convert defendant's single act into separate crimes." *Id.* at 355.

Diego argues that this reasoning compels the conclusion that subparagraphs 163.427(1)(a)(A) through (C) describe different means to commit the same offense, rather than listing alternative elements for separate offenses. We disagree. *Parkins*'s conclusion that a defendant cannot be convicted of three different violations of section 163.427 for a single criminal episode does not address the question

whether the three subparagraphs contain alternative elements that effectively create different crimes. Indeed, *Parkins* stated that these subparagraphs constitute "three alternative *elements* for first-degree sexual abuse." *Id.* at 350–51 (emphasis added). This statement supports our conclusion that the state may convict the defendant of the offense described in paragraph 163.427(1)(a) only by proving one of the subparagraphs beyond a reasonable doubt. *See, e.g.*, *Marshall*, 350 Or. at 217. *Parkins* stands only for the proposition that the state may not convict a defendant of three different offenses stemming from the same incident by proving *all* the elements contained in each of the three subparagraphs (1)(a)(A) through (C).

In light of the statutory text, *Shepard* documents, and state court decisions, we conclude that subparagraphs 163.427(1)(a)(A) through (C) are divisible.

## C

We now proceed to step three of the process for determining whether a state conviction is an aggravated felony, and apply the modified categorical approach. *Mathis*, 136 S. Ct. at 2249.

As noted above, the relevant *Shepard* documents in this case—the indictment and plea petition—track the language of subparagraph (1)(a)(A), which criminalizes sexual contact with a victim "less than 14 years of age," with no reference to the remaining subparagraphs. Accordingly, we conclude that Diego was convicted under subparagraph (1)(a)(A).

Diego argues that we cannot consider his plea petition because it does not expressly state that it incorporates the

facts alleged in the indictment, citing *United States v. Vidal*, 504 F.3d 1072, 1087 (9th Cir. 2007) (en banc). We reject this argument. *Vidal* merely requires that "[w]hen a court using the modified categorical approach to determine whether an underlying conviction is a predicate offense relies solely on the link between the charging papers and the abstract of judgment, that link must be clear and convincing." *Medina-Lara v. Holder*, 771 F.3d 1106, 1113 (9th Cir. 2014). Here, the link between the indictment and the plea petition meets that standard because the plea petition expressly admits guilt as to Count 3 of the indictment and restates the offense in language that tracks the indictment, i.e., admitting the identity of the victim, whom the indictment identifies as a person under the age of 14.

We now apply the categorical approach to compare subparagraph 163.427(1)(a)(A) to the generic federal offense of sexual abuse of a minor. A conviction under subparagraph 163.427(1)(a)(A) necessarily requires sexual contact with a person under the age of 14. We have held that sexual conduct with a person under the age of 14 is per se abusive. *United States v. Valencia-Barragan*, 608 F.3d 1103, 1107 (9th Cir. 2010); *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999). Therefore, 163.427(1)(a)(A) criminalizes (1) sexual conduct (2) with a minor (3) that constitutes abuse, the same elements included in the generic federal offense. *See Valencia-Barragan*, 608 F.3d at 1107; *Baron-Medina*, 187 F.3d at 1147 (holding that "(a) the touching of an underage child's body (b) with a sexual intent" constitutes generic federal "sexual abuse of a minor"). Thus, a conviction under 163.427(1)(a)(A) is categorically a generic

federal sexual abuse of a minor offense, and by extension an aggravated felony for purposes of § 1101(a)(43)(A).**⁴**

*Rocha-Alvarado* confirms our analysis. In that case, applying the modified categorical approach, we held that subparagraph 163.427(1)(a)(A) was a "crime of violence" for federal sentencing purposes. 843 F.3d at 805. We reached this conclusion by reasoning that subparagraph 163.427(1)(a)(A) was categorically "sexual abuse of a minor," one of the categories of "crime of violence." *Id.* at 807–08. As we have previously explained, "the analysis . . . for a 'crime of violence' in the sentencing context" is "the same" as the analysis "whether a statute of conviction constitute[s] an 'aggravated felony' in the immigration context." *Valencia-Barragan*, 608 F.3d at 1107 n.1; *see also Pelayo-Garcia*, 589 F.3d at 1013 n.1. In other words, our conclusion that a state offense is a categorical match with generic federal sexual abuse of a minor for sentencing purposes carries over to immigration cases because, in both contexts, we ask the same question: whether the elements of the state crime are the same as or narrower than the elements of the generic federal offense. *See Valencia-Barragan*, 608 F.3d at 1107 n.1. As we held in *Rocha-Alvarado*, "[a]ny conviction" under subparagraph 163.427(1)(a)(A) "falls

---

**⁴** Diego was convicted of attempted first degree sexual abuse, but attempted sexual abuse of a minor is likewise an aggravated felony in the immigration context. *See* 8 U.S.C. § 1101(a)(43)(U). In a letter filed the morning of oral argument, Diego argued for the first time that Oregon's attempt statute does not match the generic federal definition of attempt. Because this issue was not "specifically and distinctly argued and raised" in Diego's opening brief, nor raised before the agency, the argument is waived. *Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001)).

within the federal definition of 'sexual abuse of [a] minor.'" 843 F.3d at 808.

V

We hold that paragraph 163.427(1)(a) of the Oregon Revised Statutes is divisible, and a conviction under subparagraph 163.427(1)(a)(A) is sexual abuse of a minor within the generic federal definition and therefore an aggravated felony for purposes of 8 U.S.C. § 1101(a)(43). Accordingly, the BIA did not err in concluding that Diego had been convicted of a particularly serious crime, *see* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i), and therefore terminating Diego's asylee status pursuant to § 1158(c)(2)(B). Apart from this purely legal question, we lack jurisdiction to review the BIA's discretionary decisions on the denial of adjustment of status and waiver of inadmissibility.

**PETITION DISMISSED IN PART AND DENIED IN PART.**